# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Marvin Faulkner and Samuel C. Umunna, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 16 CV 02432 |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Anna M. Loftus; William Farrow; Pierce & | ) | |
| Associates; Federal Deposit Insurance | ) | |
| Corp.; Urban Partnership Bank; Shorebank; | ) | |
| Chuhak & Tecson, P.C.; Michael A. Eurich; | ) | |
| Villa Capital Properties; George F. Scully, | ) | |
| Jr.; Elizabeth Lyons; Darryl B. Simko; City | ) | |
| of Chicago; Alfred M. Swanson, Jr.; LaSalle | ) | |
| Bank National, as Trustee for Certificate | ) | |
| Holders of Bear Stearns Asset Backed | ) | |
| Securities I, LLC, Asset-Backed Certificates, | ) | |
| Series 2007-HE6; Mortgage Electronic | ) | |
| Registration Systems; Encore Credit; EMC | ) | |
| Mortgage Corporation; Bear Stearns Asset | ) | |
| Backed Securities I LLC; Nationstar | ) | |
| Mortgage LLC; CitiMortgage, Inc.; Bear | ) | |
| Stearns Asset Backed Securities I Trust | ) | |
| 2007-HE6; Federal National Mortgage | ) | |
| Association; First Franklin Mortgage; U.S. | ) | |
| Bank National Associates; Michael N. Varak; | ) | |
| Bryant Gomez; Kovitz, Shifrin & Nesbit Law | ) | |
| Office; Meredith Freeman; Edward J. | ) | |
| Lesniak; Alexander D. Marks; Pamela | ) | |
| Mclean Meyerson; Burke, Warren, Mackay | ) | |
| & Serritella, P.C.; Christina Place II | ) | |
| Condominium Association; Raymond W. | ) | |
| Mitchell; Irwin J. Solganick; Alexander P. | ) | |
| White; Timothy L. Rowell; Starr, Bejgiert, | ) | |
| Zink & Rowelss; Codilis & Associates; Cook | ) | |
| County Sheriff's Police Department; Sonia | ) | |
| Pasquesi; John Avgerinos; Paul Avgerinos; | ) | |
| Samantha L. Babcock; Erik Hubbard; | ) | |
| Hauselman, Rappin & Olswang, Ltd.; and | ) | |
| Roderick Pierce, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Marvin Faulkner[1] filed this *pro se* lawsuit against forty-eight defendants, including a variety of Cook County judges, law firms, and banks. R. 247, Sec. Am. Compl. Faulkner alleges a racketeering conspiracy under 18 U.S.C. § 1962(c) (RICO), violations of his civil rights under 42 U.S.C. § 1983, hate crimes under 18 U.S.C. § 249, and various other federal and state claims.[2] *Id.* ¶¶ 142-231. All of the remaining defendants[3] jointly moved to dismiss for lack of subject matter

---

[1]Another plaintiff, Samuel Umunna, filed a voluntary notice of dismissal on June 6, 2017. R. 284.

[2]This Court has subject matter jurisdiction over the federal claims in this case under 18 U.S.C. § 1331 and supplemental jurisdiction over certain state law claims under 28 U.S.C. § 1367. As discussed in this Opinion, there is no subject matter jurisdiction over any claims arising from a final state court judgment under the *Rooker-Feldman* doctrine.

[3]Faulkner filed a motion for default on May 25, 2017 as to thirteen defendants listed in the caption of the Second Amended Complaint: William Farrow, Encore Credit, EMC Mortgage Corporation, Bear Sterns Asset Backed Securities I LLC, Bear Stearns Asset Backed Securities I Trust 2007-HE6, First Franklin Mortgage, Edward J. Lesniak, Alexander D. Marks, Burke Warren Mackay & Serritella, P.C., Christina Place II Condominium Association, John Avgerinos, Paul Avgerinos, and LaSalle National Bank. R. 270. This Court denied Faulkner's motion for default without prejudice on May 30, 2017 because Faulkner did not adequately explain how each defendant for whom default was sought was properly served (and the returns of service say only that summons were sent to each defendant by "certification"—if that means certified mail, it is not a proper way to serve individual defendants or corporations under Federal Rules of Civil Procedure 4(e) and 4(h)). R. 275 at 2. The Court allowed Faulkner to file a renewed motion for default specifically explaining how each defendant was served and why that is a proper means of service. *Id.* Faulkner never filed a renewed motion for default. Without more, the Court cannot consider the thirteen defendants to be properly served, and now dismisses them for lack of service under Rule 4(m).

Although Shorebank is named as a defendant, Defendants "ShoreBank" and the "Federal Deposit Insurance Corporation" are generally and collectively referred to as "FDIC-Receiver" in this Opinion. In August 2010, the Illinois Department of Financial and Professional Regulation closed ShoreBank and appointed the Federal Deposit Insurance Corporation as Receiver. Defs.' Combined Mot. Dismiss at 2 n.1. Upon appointment, by operation of law, the FDIC-Receiver succeeded to all of ShoreBank's rights, title, and interests and assumed authority to resolve any and all claims relating to ShoreBank. *See* 12 U.S.C. §§ 1821(d)(2)(A), 1821(d)(2)(B), 1821(d)(3). Thus, with respect to Faulkner's allegations against Defendants "ShoreBank" and the "Federal Deposit Insurance

jurisdiction under the *Rooker-Feldman* doctrine and/or failure to state a claim, R. 259, Defs.' Combined Mot. Dismiss; R. 264 Defs.' Mem. Supp. Combined Mot. Dismiss, and many defendants filed individual briefs addressing arguments specific to them, R. 251, Def. FDIC's Mem. Supp. Mot. Dismiss; R. 260, Judicial Defs.' Mem. Supp. Mot. Dismiss; R. 262, City of Chicago's Mem. Supp. Mot. Dismiss; R. 267, Defs. Urban, Hubbard & Villa's Mem. Supp. Mot. Dismiss; R. 269, Defs. Chuhak, Eurich, & Babcock's Mem. Supp. Mot. Dismiss. For the reasons discussed below, the motions to dismiss are granted.[4]

## I. Background

Faulkner filed this action in February 2016, R. 1, and then filed an amended complaint (with permission from the previously assigned judge) in July 2016, R. 34, 35. Faulkner's First Amended Complaint alleged that some fifty defendants participated in an "illicit scheme" through which they defrauded Faulkner and Samuel Umunna (the voluntarily dismissed plaintiff) out of millions of dollars from allegedly fraudulent mortgage foreclosures in state court. R. 35, First Am. Compl. ¶¶ 73, 76. The named defendants included Cook County judges, banks, and

---

Corporation," the FDIC-Receiver is the real party in interest and the proper defendant. *See Farnik v. Federal Deposit Ins. Corp.*, 707 F. 3d 717, 721 (7th Cir. 2013).

Finally, Plaintiffs' First Amended Complaint, R. 35, named Jenner and Block, LLP as a defendant, but the Second Amended Complaint does not list Jenner in the case caption as required by Rule 10(a), and includes no particularized allegations against Jenner, only including it in mass-group allegations. Sec. Am. Compl ¶¶ 74, 143, 147, 174, 184, 202, 212. Jenner filed a motion to confirm that it is not a defendant in plaintiffs' Second Amended Complaint, R. 265, which the Court grants for the reasons discussed below.

[4]As detailed later, this Opinion also resolves Kovitz Shifrin Nesbit and Bryant Gomez's Motion for Rule 11 Sanctions, R. 287 (which is denied); Urban Partnership Bank's Motion for Attorney's Fees, R. 297 (which is granted); and the rule to show cause why certain statements in Faulkner's motion for recusal do not violate Rule 11(b)(1) or 11(b)(3), R. 291 (a sanction is imposed).

attorneys involved in the foreclosure proceedings, as well as Cook County sheriff deputies that were in the courtroom during foreclosure proceedings, and a host of others. *Id.* ¶ 75. As a result of Defendants' alleged scheme, Faulkner lost a significant amount of money and properties he owned in Cook County. *Id.* ¶¶ 76-77. Faulkner asserted that, in retaliation for uncovering the scheme and filing complaints, he was placed on a "hit list" and fears for his life. *Id.* ¶¶ 98, 192.

Many of the defendants moved to dismiss the First Amended Complaint, R. 40, 48, 51, 76, 95, 98, 120, 133, 154, 156, 158, 161, 164, 167, 169, and the previously assigned judge dismissed the sprawling, 140-page complaint for failure to comply with Federal Rule of Civil Procedure 8(a), R. 235. The prior judge granted Faulkner and Umunna leave to amend if they strictly complied with Rules 8 and 11. *Id.* at 5. The case was then reassigned to this Court. R. 238, Executive Committee Order (Mar. 13, 2017). Faulkner and Umunna filed the 125-page, 238-paragraph, 11-count Second Amended Complaint in April 2017 against 48 defendants. R. 247.

The Second Amended Complaint again alleges a vast conspiracy that supposedly targeted Faulkner and Umunna for uncovering the "Money Laundering Scheme." Sec. Am. Compl. ¶ 71. The conspirators placed Faulkner and Umunna on a "Hit List" and harmed them by unlawfully foreclosing on many of their properties. *Id.* Faulkner alleges 11 counts against Defendants, labelled: (1) "RICO (Violations of RICO, under *18 U.S.C. § 1961 et. seq.* and 18 U.S.C. Section 1962(c) (RICO) … 18 U.S.C. § 1962(d))," including a sub-section, "Fraud: Conspiracy to Violate RICO"; (2) "18 U.S.C. § 242"; (3) "Intentional Infliction of Emotional Distress"; (4)

"Intimidation"; (5) "Unjust Enrichment"; (6) "Intentional Tort"; (7) "Hate Crime: 18 U.S. Code § 249"; (8) 42 U.S.C. "§ 1985(3) Deprivation"; (9) 42 U.S.C. "§ 1986 Conspiracy"; (10) "Pierced Corporate Veil"; and (11) "42 U.S.C. § 1983." *Id.* at 64-111. As part of these claims, Faulkner states that Defendants have deprived him of his constitutional rights and have violated the Second, Fourth, Fifth, and Fourteenth Amendments through their "illicit acts." *Id.* ¶ 147. Faulkner further contends that Defendants have caused him "severe and substantial damages," including "loss of income, loss of benefits, loss of investments, diminished earnings capacity, loss of career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, intimidation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages." *Id.* ¶ 145. He requests $4,905,771.87 in actual damages, an amount to be determined in compensatory damages, $14,717,315.61 in treble damages, and $40 million in punitive damages. *Id.* Defendants now move to dismiss. R. 259.

## II. Standard of Review

### A. Rule 12(b)(1)

All of the Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6) (or both). A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Long v. ShoreBank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999), while a Rule 12(b)(6) motion tests the legal sufficiency of the complaint, *Hallinan*, 570 F.3d at 820; *Gibson v. City of Chi.*, 910 F.2d 1510, 1520

5

(7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(1), if there are no factual disputes, then the Court accepts the allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th. Cir. 2017). Having said that, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology and Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

## B. Rule 12(b)(6)

The other ground that Defendants advance is Rule 12(b)(6). So long as the court has jurisdiction over the complaint, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. "[A]

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g.*, *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Ordinarily, claims only must meet the Rule 8(a)(2) standard. But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under RICO. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Thus, Rule 9(b) requires that Faulkner's Second Amended Complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). The complaint may not "lump together" multiple defendants without specifying "who was involved in what activity." *Vicom*, 20 F.3d at 778 (cleaned up). In other words, his complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (cleaned up).

### III. Rooker-Feldman

Twenty-nine of the Defendants move to dismiss for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Defs.' Combined Mot. Dismiss at 3-4; *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). This doctrine rests on the premise that the Supreme Court is the only federal court with appellate authority over state court decisions. *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004). It prevents lower federal courts—like this Court—from exercising jurisdiction over cases challenging state court judgments entered before the losing party files a federal suit "requesting a remedy for an injury caused by that judgment." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

"Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry." *Taylor*, 374 F.3d at 532. The core of *Rooker-Feldman* bars a party from directly contesting a state court judgment's validity in a lower federal court, but the doctrine also applies when a party brings a federal case that is "closely enough related" to a state court judgment, even if the losing party is not directly asking the lower federal court to review the state judgment. *Mains v. Citibank*, 852 F.3d 669, 675 (7th Cir. 2017). For example, if the federal plaintiff is seeking relief for an injury that is *caused* by the state court judgment, then in effect the plaintiff really is seeking—impermissibly— review of the judgment. *Id.* So the doctrine applies if there is "no way for the injury

8

complained of by a plaintiff to be separated from a state court judgment." *Id.* (quoting *Sykes v. Cook Cty. Cir. Ct. Prob. Div.,* 837 F.3d 736, 742 (7th Cir. 2016)). In contrast, if a suit seeks damages for independently unlawful conduct—separate and apart from the state court judgment—it should not be barred. *See Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769, 773 (7th Cir. 2014). The Seventh Circuit has not definitively held that a judgment of foreclosure is a final order for *Rooker-Feldman* purposes, because it is an interlocutory order under Illinois law. *See Balogh v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 5890878, at *4 n.8 (N.D. Ill. Nov. 28, 2017) (collecting cases). Once the state court enters an order confirming the foreclosure sale, however, the underlying state court is barred by *Rooker-Feldman. See Medrano v. Ocwen Loan Serv., LLC*, 2017 WL 413614, at *4 (N.D. Ill. Jan. 31, 2017) (collecting cases).

Because many of Faulkner's claims are premised on alleged constitutional violations, it is important to note that the Seventh Circuit has repeatedly held that "a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Holt v. Lake Cty. Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (quoting *Long,* 182 F.3d at 556 ("[I]t does not seem that Long's due process argument can be considered separate from the eviction order entered against her")); *see also Ritter v. Ross,* 992 F.2d 750, 755 (7th Cir. 1993). Therefore, even when a plaintiff alleges a due process violation or other similar injury, the Court must ensure that it is not simply an attack on an underlying state court judgment.

A plaintiff also may not circumvent the *Rooker-Feldman* bar just by alleging fraud in connection with the underlying state action. *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) ("[F]raud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit.") (citation omitted). The key is the source of the injury: "if a federal plaintiff alleges that a fraud produced an adverse state-court decision, then the judicial decision is the source of injury for *Rooker-Feldman* purposes." *Dawaji v. Askar*, 618 F. App'x 858, 859 (7th Cir. 2015). A district court has no jurisdiction to hear a claim that requires it to evaluate a state court decision that injured the federal plaintiff, even if that decision is allegedly premised on fraud. *Id.* Indeed, Illinois law also allows fraud to be pleaded as a defense in a foreclosure action. 735 ILCS 5/15-1508(b); *see also Sheikhani v. Wells Fargo Bank*, 526 F. App'x 705, 706-07 (7th Cir. 2013).

As detailed in the next section, many of Faulkner's claims arise from state cases with final judgments: this Court lacks jurisdiction over them and they must be dismissed.[6] Some of the state cases, however, do not name Faulkner as a party or have not progressed to the point of final judgments, so *Rooker-Feldman* is not a bar to those claims.

---

[6] Faulkner's only response to Defendants' *Rooker-Feldman* arguments is that the Second Amended Complaint alleges violations of RICO and other causes of action that are not state law issues and have not been litigated in state court. R. 317, Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 5. That response misses the mark: it is irrelevant what claim he brings in federal court—if that claim arises out of injuries caused by a state court judgment, then it is barred by *Rooker-Feldman*. *See Holt*, 408 F.3d at 336.

### A. Claims Barred by Rooker-Feldman

### 1. Trustee, Pierce & Associates, Freeman, and Varak

U.S. Bank National Association, as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB6 (for convenience's sake, the Trustee),[7] and its attorneys Pierce & Associates, P.C., Meredith Freeman, and Michael N. Varak,[8] argue that Faulkner's claims against them are barred because they are premised on injuries Faulkner sustained as a result of a foreclosure action brought in the Circuit Court of Cook County, 2008-CH-02926. Defs.' Mem. Supp. Combined Mot. Dismiss at 4-5, 12-13.

Pierce & Associates represented the Trustee in this foreclosure action. The state court entered a judgment of foreclosure in the Trustee's favor, and confirmed the foreclosure sale in November 2009. Defs.' Mem. Supp. Combined Mot. Dismiss at 4-5; *id.*, Exhs. 2-3.[9] Faulkner appealed the Circuit Court judgment, and the

---

[7]Sued as "U.S. Bank National Associates" in the Second Amended Complaint.

[8]Varak is an attorney at Pierce & Associates. Sec. Am. Compl. ¶ 45. Neither Faulkner nor Pierce & Associates nor Freeman specifically state that Freeman is an attorney at Pierce & Associates, but the allegations in the Second Amended Complaint make it clear she was at the relevant time. *See* Sec. Am. Compl. ¶ 114 (Freeman was the attorney working on 2008-CH-13579, and Pierce & Associates represented the plaintiffs).

[9]"Where a party raises the issue of subject matter jurisdiction, a court need not simply rely on the facts alleged in the complaint, but also may consider extrinsic evidence to determine whether it can exercise jurisdiction." *Johnson*, 551 F.3d at 567; *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) ("In determining whether to dismiss for lack of jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (cleaned up). The Court also can take judicial notice of the pleadings from the state court proceedings because they are matters of public record. *See, e.g.*, *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (citation omitted).

The Trustee did not file a copy of the judgment of foreclosure and sale, noting it was missing from the court file. Defs.' Mem. Supp. Combined Mot. Dismiss at 4 n.4. But the state court docket shows that the judgment of foreclosure was entered on August 6, 2008,

Illinois Appellate Court dismissed the appeal for lack of prosecution. *Id.* at 5; *id.*, Exh. 4. Because a final judgment was entered in state court, this Court lacks jurisdiction over any claims against the Trustee, Pierce & Associates, Freeman, and Varak arising from 2008-CH-02926.

The Trustee argues that the Second Amended Complaint does not allege any other facts pertaining to it. Defs.' Mem. Supp. Combined Mot. Dismiss at 4-6. Pierce & Associates, Freeman, and Varak argue more generally that Faulkner's claims against them are barred by *Rooker-Feldman* because they are directly related to their roles in "one or more foreclosure proceedings in state court." *Id.* at 12. Faulkner asserts that he was injured by another mortgage foreclosure action, 2008-CH-13579. Sec. Am. Compl. ¶¶ 114-115, 134-36. The Second Amended Complaint just barely connects the Trustee to allegations about that state action, *id.* ¶ 135 ("[T]he method of ... [U.S. Bank] and [other defendants] to place/name the City of Chicago as a named defendant in case number: 2008-CH-13579 was malice and improper ... ."). The state docket also names U.S. Bank National Association—the name under which Faulkner sued the Trustee in the Second Amended Complaint— as one of the plaintiffs. Pierce & Associates again represented the Trustee, and the Second Amended Complaint alleges some facts connecting Freeman and Varak to the action. *Id.* ¶¶ 114-115, 134. As discussed further below, 2008-CH-13579 remains pending in state court and thus a decision on any federal claims arising from it

---

*id.*, Exh. 2 at 4, that the state court confirmed sale, *id.*, Exh. 3 and that the state appellate court dismissed the appeal for want of prosecution, thereby affirming the judgment, *id.*, Exh. 4.

would not require this Court to set aside a final state court judgment. So there is no *Rooker-Feldman* problem (though there are other problems) with Faulkner's claims against the Trustee, Pierce & Associates, Freeman, and Varak as they relate to Case No. 2008-CH-13579.

Finally, the Second Amended Complaint contains allegations arising from a list of mortgage foreclosure cases that Faulkner alleges were brought by Urban Partnership Bank. Case No. 2012-CH-28852 was actually a case filed by U.S. Bank, although it is unclear if it did so in its role as Trustee. *Id.* ¶ 83(o). Even if it did, the Second Amended Complaint contains no allegations linking the Trustee to that case, and according to the docket, the state court approved the foreclosure sale in 2016, meaning a final judgment was entered for *Rooker-Feldman* purposes. So this Court lacks jurisdiction over any claims arising from Case No. 2012-CH-28852.

## 2. City of Chicago

The City of Chicago argues that Faulkner's allegations about it are limited to the demolition of a property owned by Faulkner that was the subject of a state court demolition case, Case No. 2014-M1-403324. Defs.' Mem. Supp. Combined Mot. Dismiss at 7; Sec. Am. Compl. ¶¶ 113, 122. Faulkner was named as a defendant in that state court action, and the state court docket shows that two alias summons were issued for Faulkner and that the City was eventually granted leave to effect service through publication. Defs.' Mem. Supp. Combined Mot. Dismiss at 7-8; *id.* Exh. 7. Faulkner was thus a party to the demolition action.[10] The state court

---

[10]Faulkner argues he did not receive proper notice of the demolition action, did not have a chance to make repairs before the demolition, and that he was not allowed to litigate

entered an Emergency Order of Demolition in March 2015. *Id.* at 8; *id.*, Exh. 8. The injuries Faulkner contends that he sustained as a result of the City's actions ultimately are a result of a final state court judgment ordering the demolition of the property. This Court thus lacks jurisdiction under *Rooker-Feldman* over the claims relating to the demolition case.

That said, the Second Amended Complaint makes a passing reference to the City of Chicago's alleged role in a state foreclosure case, Case No. 2008-CH-13579. Sec. Am. Compl. ¶ 135. The Second Amended Complaint alleges—and the state court docket confirms—that the City of Chicago is a party to that foreclosure action. *Id.* As noted above, and discussed in more depth below, because there has not been a final judgment entered in 2008-CH-13579, *Rooker-Feldman* is not a bar to claims arising from it.

### 3. Timothy L. Rowells and Starr, Bejgiert, Zink & Rowells

Faulkner alleges that he was injured when Timothy Rowells, an attorney at Starr Bejgiert, Zink & Rowells, filed a civil complaint on behalf of John Avgerinos, who alleged a breach of contract against Faulkner in Case No. 2011-L-013743. Sec. Am. Compl. ¶ 99. Faulkner contends that he sustained injuries because of a threat Rowells made in the course of litigation, and that he was harmed by the judgment

---

the state court action. Sec. Am. Compl. ¶¶ 113, 122. Service was proper under 735 ILCS 5/2-206, and even if it was not, an improperly served party to a state action is still barred from attacking the state judgment in federal court under *Rooker-Feldman*. *Riddle v. Deutsche Bank Nat. Tr. Co.*, 599 F. App'x 598, 600 (7th Cir. 2015) (non-precedential disposition). That makes sense because otherwise a lower federal court would be, in effect, setting aside a state court judgment, which is precisely what *Rooker-Feldman* prohibits. In any event, Faulkner also filed an appearance and a motion in that case, demonstrating his participation in the action. Defs.' Mem. Supp. Combined Mot. Dismiss at 8; *id.* Exh. 7.

against him in the contract case. *Id.* ¶¶ 104, 105, 123. Faulkner admits that a final judgment was entered against him, *id.* ¶ 104, which the state docket confirms. With that final judgment in place, this Court lacks jurisdiction over Faulkner's claims arising from the adverse judgment in Case No. 2011-L-013743.

The only arguable exception would be Faulkner's allegation that Rowells threatened Faulkner during the course of litigation. *See* Sec. Am. Compl. ¶¶ 99, 123 (Rowells allegedly told Faulkner that the state judges would put Faulkner in jail if he did not dismiss another federal case he had filed in this Court, *Faulkner et al. v. Otto et al.*, 15-cv-03344, (N.D. Ill. Apr. 15, 2015)). A decision in Faulkner's favor about any injuries arising from Rowells's alleged threat would not nullify the judgment in 2011-L-013743, so *Rooker-Feldman* does not bar any claims arising from that allegation.

### 4. Kovitz, Shifrin, & Nesbit and Bryant Gomez

The Second Amended Complaint alleges injuries arising out of Kovitz, Shifrin, & Nesbit (KSN) and Bryant Gomez's handling of an eviction case, Case No. 2009-M1-718493.[11] Sec. Am. Compl. ¶ 99. The state court docket shows that Faulkner was a party to the action and that a "final and appealable" order was entered on July 7, 2010. This Court thus lacks jurisdiction over Faulkner's claims against KSN and Gomez because they attack the state court's final judgment in the foreclosure case.

---

[11]Although neither Faulkner nor KSN and Gomez attached a copy of the state court docket to their pleadings, the Court was able to take judicial notice of the online docket, because it is a public record. *Milwaukee Police Ass'n*, 863 F.3d at 640. The docket shows Faulkner was a party to the action.

### 5. Chuhak & Tecson, P.C., Michael Eurich, Samantha Babcock, Urban Partnership Bank, Villa Capital Properties, and Erik Hubbard

Faulkner's allegations relating to Chuhak & Tecson, P.C., Michael Eurich, Samantha Babcock (collectively, Chuhak),[12] Urban Partnership Bank (UPB), Villa Capital Properties (VPC), and Erik Hubbard arise from the handling of numerous mortgage foreclosure actions that Chuhak brought on behalf of its client, UPB, against Faulkner and others, and for which Eric Hubbard of VPC acted as court-appointed receiver. Sec. Am. Compl. ¶¶ 83-84, 101-03; Defs.' Mem. Supp. Combined Mot. Dismiss at 15. In each case listed below, the state court entered an order approving the selling officer's report of sale and distribution in favor of UPB. Defs.' Mem. Supp. Combined Mot. Dismiss at 15-16; *id.*, Exh. 13.

- 2012 CH 38239, 2950 W. Monroe, Chicago, IL 606012, Sec. Am. Compl. ¶ 83(a);
- 2012 CH 37389, 2954 W. Monroe, Chicago, IL 60612, *id.* ¶ 83(b);
- 2012 CH 38240, 13239 S. Baltimore, Chicago, IL 60633, *id.* ¶ 83(c);
- 2014 CH 01156, 11332 S. Calumet, Chicago, IL 60628, *id.* ¶ 83(d);
- 2012 CH 40727, 12822 S. Emerald, Chicago, IL 60628, *id.* ¶ 83 (e);
- 2012 CH 36572, 10141 S. Crandon, Chicago, IL 60617, *id.* ¶ 83 (f);
- 2012 CH 38596, 7739 South King Drive, Chicago, IL 60619, *id.* ¶ 83(g);
- 2012 CH 38032, 10736 S. Vernon, Chicago, IL 60628, *id.* ¶ 83(h);
- 2012 CH 37391, 2946 W. Monroe, Chicago, IL 60612, *id.* ¶ 83(i);
- 2012 CH 38034, 8206 S. Honore, Chicago, IL 60620, *id.* ¶ 83(j);
- 2012 CH 38031, 1140 S. Keeler, Chicago, IL 60624, *id.* ¶ 83(k);
- 2012 CH 44556, 1104-06 W. 78th Street, Chicago, IL 60620, *id.* ¶ 83(l);
- 2012 CH 38033, 10024 S. Morgan, Chicago, IL 60643, *id.* ¶ 83(n).

*Rooker-Feldman* strips this Court of jurisdiction over any claims arising out of the final judgments entered in those foreclosure cases.

---

[12]Michael Eurich and Samantha Babcock are attorneys formerly affiliated with Chuhak & Tecson, P.C. during the relevant time period. R. 269, Def. Chuhak's Mem. Supp. Mot. Dismiss at 2.

Faulkner alleges injuries arising from two other state foreclosure cases: 2012-CH-28852 (10739 South Cottage Grove Ave. Chicago, IL 60628), *id.* ¶ 83(o) and 2012-CH-38498 (1437 W. Howard, Chicago, IL 60626), *id.* ¶ 83(m). Case No. 2012-CH-28852 did not involve any named defendant except for U.S. Bank. As discussed above, even if Faulkner could make plausible allegations linking Chuhak, UPB, VPC, or Hubbard to the case, this Court lacks jurisdiction over any claims related to it, because the state court approved the foreclosure sale in 2016.

Faulkner's claims related to Case No. 2012-CH-38498, however, are not as straightforward. Faulkner petitioned to remove the case to federal court in February 2016. R. 7. This Court remanded it back to Cook County Chancery Court in May 2017. R. 254. Once back in Chancery Court, a foreclosure judgment was entered in June 2017 and a motion hearing was set to approve the sale in December 2017. But the docket does not show that the state court has confirmed the sale yet. So a final judgment has not been entered that definitely deprives this Court of jurisdiction under *Rooker-Feldman*. *See Balogh*, 2017 WL 5890878, at *4.

### 6. FDIC-Receiver

Faulkner's allegations against the FDIC, as receiver for Shorebank, arise out of the state court foreclosure proceedings initiated by UPB, discussed in the preceding subsection. Sec. Am. Compl. ¶¶ 76-79, 81, 83-87. Although the FDIC-Receiver was not a party to those state actions, Faulkner alleges that the FDIC-Receiver is, in part, responsible for injuries resulting from actions taken in connection with (1) purported irregularities relating to the 2010 Purchase and

Assumption Agreement authorizing UPB to initiate the foreclosure proceedings; and (2) the FDIC-Receiver's allegedly improper failure to oversee the proceedings. *Id.* Because the relief Faulkner seeks would require this Court to review and nullify the underlying state court judgments, the Court lacks jurisdiction over Faulkner's claims under the *Rooker-Feldman* doctrine.[13] If any of Faulkner's claims against the FDIC do not arise from the state foreclosure proceedings—although this Court is skeptical that any do—the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821, also strips this Court of jurisdiction over those claims, as discussed in more depth below.

### 7. Anna Loftus, Pamela Meyerson, Raymond Mitchell, George Scully, Darryl Simko, Irwin Solganick, Alfred Swanson, and Alexander White

Anna Loftus, Pamela Meyerson, Raymond Mitchell, George Scully, Darryl Simko, Irwin Solganick, Alfred Swanson, and Alexander White (collectively, the Judicial Defendants) argue that Faulkner's claims against them are barred by the *Rooker-Feldman* doctrine because his claims would require this Court to review the orders and judgments they entered as judges in the Cook County Chancery Court. Defs.' Mem. Supp. Combined Mot. Dismiss. at 11. The Court agrees: Faulkner's allegations against the Judicial Defendants relate to injuries arising from the state foreclosure proceedings, including general case management procedures, allegedly fraudulent orders, and threats made during case proceedings. *See, e.g.*, Sec. Am. Compl. ¶ 111 (Judge Loftus acted with "hate against [ ] Faulkner" when she struck

---

[13]As discussed above, this Court may retain jurisdiction over claims arising out of Case No. 2012-CH-38498. That said, FIRREA strips the Court's jurisdiction over claims arising from it against the FDIC-Receiver.

Faulkner's motion to intervene as moot); *id.* ¶116 (Faulkner "had prior threats" from Judge Loftus, including a racial slur); *id.* ¶ 104 (Judge Mitchell, Judge Solganick, Judge White, and defendant Timothy Rowell conspired to ensure a judgment against Faulkner); *id.* ¶ 112 (Judge Scully played an "active role … to illicitly take Faulkner's property"); *id.* ¶ 102 (Judge Simko incorrectly modified an order to accommodate the objections of the attorney opposing Faulkner). The relief that Faulkner seeks would require this Court to overturn the orders and judgments entered by these judges in state court, which *Rooker-Feldman* prevents. As discussed above, Faulkner's allegations of fraud by the Judicial Defendants do not allow him to circumvent *Rooker-Feldman* because his alleged injuries ultimately arose from the orders and judgments, and there is no fraud exception to the jurisdictional bar. *See Iqbal v. Patel*, 780 F.3d at 730.

That being said, as noted above, not all of the state cases that gave rise to Faulkner's allegations are definitively barred by *Rooker-Feldman*. This Court would have jurisdiction over claims arising out of Case Nos. 2008-CH-13579 and 2012-CH-38498, because no final order approving the sale of foreclosure has been entered in either case. So Faulkner's claims relating to 2008-CH-13579 as to Judges Loftus and Meyerson, Sec. Am. Compl. ¶¶ 114, 134-35, and to 2012-CH-38498 as to Judges Loftus, Simko, and Meyerson, *id.* ¶ 84, survive *Rooker-Feldman*. As discussed in more detail below, Faulkner's allegations relating to Case No. 2010-CH-31405 also are not barred by *Rooker-Feldman* because Faulkner was not a party to that action.

## B. Claims Not Barred by *Rooker-Feldman*

## 1. No Final Judgment

As noted above, the Seventh Circuit has not definitively decided whether *Rooker-Feldman* applies to judgments of foreclosure (which are interlocutory), and the courts in this District are divided on the issue. *See Balogh v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 5890878, at *4 n.8-9 (N.D. Ill. Nov. 28, 2017) (discussing the debate and collecting cases). Under Illinois law, a judgment of foreclosure—despite the fact that it is called a "judgment"—is an interlocutory order. *EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012); *HSBC Bank USA v. Townsend*, 793 F.3d 771, 776 (7th Cir. 2015). That is, a judgment of foreclosure does not actually "dispose of all issues between the parties and it does not terminate the litigation." *See HSBC Bank USA*, 793 F.3d at 776 (quoting *EMC Mortg.*, 982 N.E.2d at 154). Other steps remain in a foreclosure case, even after the judgment of foreclosure. The lender eventually will ask for an order of possession (authorizing the lender to take possession of the property), as well as an order allowing and then approving the sale of the property. *HSBC Bank USA*, 793 F.3d at 776. Indeed, the borrower still has an opportunity to redeem the property after the foreclosure judgment is entered. *Id.* In light of the general duty of federal courts to exercise jurisdiction when it applies, the safer route is to hold that lower federal courts do have jurisdiction over claims arising from state court foreclosure cases in which

there has been a judgment of foreclosure, but the state court has not confirmed the sale.[14]

With that holding in mind, this Court does have jurisdiction over Faulkner's claims related to Case No. 2012-CH-38498, which was remanded back to state court in May 2017. R. 254. Although the Chancery Court entered a foreclosure judgment in June 2017, no order confirming the sale has yet been entered. So Faulkner's claims arising from 2012-CH-38498 as to Chuhak, UPB, VPC, Hubbard, FDIC-Receiver, Judge Loftus, Judge Simko, and Judge Meyerson survive the motion to dismiss for lack of jurisdiction under *Rooker Feldman* (there are other problems with the claims, as discussed below).

This Court also has jurisdiction over Faulkner's claims arising from Case No. 2008-CH-13579 because a final order confirming the sale has not been entered yet. A review of the docket shows that Judge Loftus entered a non-final judgment of foreclosure in March 2015. The case was removed to federal court in August 2015 as part of another case Faulkner had filed in this District. *Faulkner et al. v. Otto et al.*, No. 15-cv-03344 (N.D. Ill. Sept. 9, 2015), R. 18. In that case, the Court did not address whether the removal was proper before dismissing Faulkner's action in May 2016. *Faulkner v. Otto*, 2016 WL 1381795, at *7 (N.D. Ill. Apr. 5, 2016). When Faulkner's federal case was dismissed, however, activity resumed in the case in Chancery Court and to this day, activity continues in the state case. *See* Docket,

---

[14]The parties did not provide a full adversarial presentation on this issue, so the Court might arrive at a different conclusion in a later case. Also, although *Colorado River* abstention or dismissal likely is warranted here, because none of the parties mentioned, let alone briefed, that doctrine, the Court declines to invoke it on its own initiative. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976).

2008-CH-13579 (motion filed March 19, 2018). So this Court has jurisdiction over Faulkner's claims related to 2008-CH-13579 against the Trustee, Pierce & Associates, Freeman, Varak, the City of Chicago, Judge Loftus, and Judge Meyerson.[15] Sec. Am. Compl. ¶¶ 114-115, 134-35.

## 2. Case in Which Faulkner Was Not a Party

Faulkner alleges that CitiMortgage, Inc. (Citi); Nationstar; Federal National Mortgage Association (Fannie Mae); Pasquesi; and Hauselmann, Rappin & Olswang, Ltd (HRO) were involved in an alleged scheme *not* to name him in a foreclosure action filed in the Circuit Court of Cook County, 2010-CH-31405. Sec. Am. Compl. ¶¶ 109-112, 116, 120. Faulkner filed five motions to intervene in the action, but filed them more than thirty days after the state court had entered an order approving the foreclosure sale, which was the final judgment. *Medrano*, 2017 WL 413614, at *4; Defs.' Mem. Supp. Combined Mot. Dismiss at 6-7, 13-14; *id.* Exhs. 5, 10, 11. In light of the untimeliness of the motions, the state court dismissed each intervention motion for lack of jurisdiction. Defs.' Mem. Supp. Combined Mot. Dismiss, Exh. 10. The state court's order dismissing Faulkner's motions is not itself a final order triggering the *Rooker-Feldman* bar. *See, e.g. MidFirst Bank v. McNeal*, 52 N.E.3d 378, 384 (Ill. App. Ct. 2016) (state court's denial of third-party's motion to intervene in foreclosure proceedings was not a final, appealable judgment).

---

[15]The Second Amended Complaint also includes allegations relating to this case against MERS, Codilis & Associates, and Alexander Marks. Sec. Am. Compl. ¶ 135. As discussed above, Alexander Marks is no longer a defendant, because he was dismissed for lack of proper service. Fed. R. Civ. P. 4(m). MERS and Codilis did not move for dismissal under the *Rooker-Feldman* doctrine, but rather for failure to state a claim under Rule 12(b)(6). Defs.' Combined Mot. Dismiss at 3.

Defendants argue that *Rooker-Feldman* bars non-parties to the state action from filing a federal action that attempts to disturb the state court judgment. Defs.' Mem. Supp. Combined Mot. Dismiss at 6. The cases that Defendants cite, while on-point, are all from 2001 or earlier. *Id.* (citing *Nationscredit Home Equity Services v. City of Chicago*, 135 F. Supp. 2d, 905, 917-18 (N.D. Ill. Mar. 22, 2001); *T.W. & M.W. v. Brophy*, 124 F. 3d 893, 898 (7th Cir. 1997); *Hoover v. Wagner*, 47 F. 3d 845, 851 (7th Cir. 1995)). After those decisions were issued, however, the Supreme Court has made it clear that lower courts had extended *Rooker-Feldman* too far. *Lance v. Dennis*, 546 U.S. 459, 464 (2006). Indeed, *Lance* specifically held that *Rooker-Feldman* is "inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding." *Id.* (discussing the proper scope of the doctrine). Faulkner's attempts to intervene in the state court action do not make him a party to it. *See MidFirst Bank*, 52 N.E.3d at 384 (third party's improper motion to intervene "amounted to a nullity").

Next, Defendants argue that the post-foreclosure eviction action (2014-M1-72241) also was a source of Faulkner's injuries, so his claims against Defendants as to the foreclosure of that property (2010-CH-31405) are inextricably intertwined with the eviction action. Defs.' Mem. Supp. Combined Mot. Dismiss at 6-7. Defendants cite only one district court case in support of this argument, in which the court found federal and state actions to be parallel for *Colorado River* purposes because both arose from the same mortgage contract between the same parties. *Id.* at 7 (citing *Charles v. Bank of Am., N.A.*, 2012 WL 6093903, at *4 (N.D. Ill. Dec. 5,

2012)). So that decision invoked *Colorado River*, not the *Rooker-Feldman* doctrine. And the Second Amended Complaint does not mention the eviction action. The defense argument impermissibly expands *Rooker-Feldman* by trying to invoke it to bar a non-party's claims arising from a mortgage foreclosure case just because he was a party to a *subsequent* eviction case. *See Lance*, 546 U.S. at 464.

The final possible argument for the defense is that the foreclosure action named "unknown owners" as defendants, Defs.' Mem. Supp. Combined Mot. Dismiss, Exh. 5, so if the state-court plaintiffs (now federal-court defendants) correctly served those unknown parties via publication, Faulkner (who was a registered owner of the property, Sec. Am. Compl. ¶ 109) could have been considered a party to the state court case. But that argument does not work. Although service was effectuated by publication, nothing in the record shows that Defendants filed the necessary affidavit in the foreclosure proceeding stating the name and description of the unknown owners. 735 ILCS 5/2-413; 735 ILCS 5/15-1501(c). Because this Court must construe all reasonable inferences in the plaintiff's favor, it must hold that Faulkner was not a party to the foreclosure proceeding.[16] *Rooker-Feldman* does not bar Faulkner's claims against Citi, Nationstar, Pasquesi,

---

[16]In one unpublished case, the Seventh Circuit held that *Rooker-Feldman* may bar a suit even if the plaintiff had not been properly served in the state court action. *Riddle*, 599 F.3d at 600 (Plaintiff claims "he was injured when the conspirators deprived him of due process and violated state law by foreclosing on his house knowing that service of process was defective. Yet it was the state court judgment that *authorized* the foreclosure and subsequent sale of plaintiff's house. Plaintiff's federal lawsuit is thus an attack on that judgment and is barred by the *Rooker-Feldman* doctrine.") (cleaned up). But Defendants do not argue that *Rooker-Feldman* applies because Faulkner was an improperly served party, and *Riddle* is non-controlling authority. Seventh Cir. R. 32.1(b).

HRO, and Judge Loftus arising out of 2010-CH-31405 because he was not a party to the action.

## IV. FIRREA

Although this Court lacks jurisdiction over all of Faulkner's claims against the FDIC-Receiver except those arising from Case No. 2012-CH-38498 under the *Rooker-Feldman* doctrine (as discussed above), there is another, independent jurisdictional bar that bars *all* of his claims. Faulkner did not exhaust the required administrative procedures under FIRREA, thus definitively depriving this Court of jurisdiction over his claims against the FDIC-Receiver.[17] When the FDIC is appointed the receiver of a failed financial institution, courts lack jurisdiction to hear any claims against the institution and the FDIC as receiver unless the plaintiffs first present the claims to the FDIC through the mandatory administrative claims process. *Farnik*, 707 F.3d at 721 (citing 12 U.S.C. § 1821(d)(13)(D)(ii)); *see* 12 U.S.C. § 1821(d)(6) (allowing review of the claims process in district courts, but only after presentation to the FDIC). The statute thus requires that a claimant properly exhaust administrative remedies before bringing a claim involving an act or omission of a failed bank or the FDIC as receiver of the bank. 12 U.S.C. § 1821(d)(13)(D); *Farnik*, 707 F.3d at 721; *see also Mains*, 852 F.3d at 678-79.

---

[17]Although exhaustion requirements are not ordinarily considered *jurisdictional* requirements (as distinct from non-jurisdictional claims-processing rules), the Seventh Circuit has characterized a complete bypass of the FIRREA administrative-claims process as a deficiency in subject-matter jurisdiction. *Farnik v. FDIC*, 707 F.3d 717, 721 n.1 (7th Cir. 2013).

As noted above, Faulkner's claims against the FDIC-Receiver stem from the 2010 Purchase and Assumption Agreement (P&A) that allowed UPB to initiate foreclosure proceedings against Faulkner. Faulkner alleges: (a) in entering into the P&A, the FDIC-Receiver improperly favored the "creator" of UPB and wrongfully failed to entertain bids from other persons, even though UPB's creator had been president of ShoreBank; (b) in entering into the P&A, the FDIC-Receiver failed to protect Faulkner and Umunna's property rights by, among other things, failing to rectify allegedly unfair lending practices to which ShoreBank supposedly subjected Faulkner and Umunna; (c) in entering into the P&A, the FDIC-Receiver conspired with the "creator" of UPB to improperly advantage the FDIC; and (d) the FDIC-Receiver improperly failed to oversee UPB's modification and foreclosure of Faulkner and Umunna's mortgages, which led to the entry of foreclosure judgments and judicial sales and caused Faulkner and Umunna to incur great expense and lose their properties. Sec. Am. Compl. ¶¶ 23-25, 76-81, 85-87. Because Faulkner's claims against the FDIC-Receiver (named as ShoreBank and the FDIC in the complaint) are all based on its actions, or failure to oversee, as *receiver*, they are subject to FIRREA. *See* 12 U.S.C. § 1821(d)(13)(D)(i) and (ii); *Farnik*, 707 F. 3d at 723 ("the FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing").

Nowhere does Faulkner argue that he exhausted his administrative remedies as FIRREA requires.[18] It appears that Faulkner completely bypassed the

_____

[18]Faulkner argues that he did not receive the FDIC-Receiver's motion to dismiss and therefore he need not respond to its arguments. R. 316, Pl.'s Resp. to Def. FDIC-Receiver's

administrative claims process when he filed his complaint, meaning this Court lacks jurisdiction over his claims against the FDIC-Receiver.[19] *See Farnik*, 707 F.3d at 721 n.1.

## V. Failure to State a Claim

### A. Rules 8(a) and 10(b)

Defendants[20] argue that Faulkner's Second Amended Complaint fails to state a claim under Rule 8(a)'s notice pleading standard and fails to plead fraud with particularity as required by Rule 9(b). Defs.' Mem. Supp. Combined Mot. Dismiss at 16-17. "[T]he particularity demands of pleading fraud under Rule 9(b) in no way negate the commands of Rule 8." *Vicom*, 20 F.3d at 776. Rule 8(a)(2) requires a complaint to contain "a *short and plain* statement of the claim showing that the

---

Mot. Dismiss at 3. As the FDIC-Receiver points out in its reply, Faulkner filed his response 108 days after the FDIC-Receiver filed its motion, and filed multiple other documents with the Court during that time, yet he never took any affirmative action to obtain a copy of the FDIC-Receiver's motion. R. 332, Def. FDIC-Receiver's Reply to Mot. Dismiss at 2. As this Court noted in a previous Order, R. 325, Faulkner's assertions of non-receipt are not credible.

Although the FDIC-Receiver published a notice stating the date by which any claims relating to ShoreBank receivership had to be filed, as required by 12 U.S.C. § 1821(d)(3), Faulkner also does not plead that he did not receive notice of the appointment of the receiver in time to file a claim before bar date. Def. FDIC's Mem. Supp. Mot. Dismiss at 5-6.

[19]Faulkner's allegations against UPB as they relate to the P&A also allegedly arise from the FDIC-Receiver's alleged wrongdoing, Sec. Am. Compl. ¶¶ 76-81, and are also barred by FIRREA. *See Farnik*, 707 F.3d at 723 ("[T]he FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing.").

[20]Because this Court lacks subject matter jurisdiction over many of Faulkner's claims under *Rooker-Feldman* and FIRREA, the rest of this Opinion applies only to the following defendants: MERS, Codilis & Associates, P.C., Lyons, Pierce, Gronowski, the Cook County Sheriff's Department, the Trustee, Pierce & Associates, Freeman, Varak, the City of Chicago, Rowells, Chuhak, Eurich, Babcock, UPB, VCP, Hubbard, Judge Loftus, Judge Meyerson, Judge Simko, Citi, Nationstar, Fannie Mae, Pasquesi, and HRO. That being said, if this Court retained jurisdiction over any claims against the remaining defendants, the discussion on the merits (or lack of it) would also apply to the jurisdictionally barred defendants.

pleader is entitled to relief." (emphasis added). Rule 8(d) requires each allegation in the complaint to be "simple, concise, and direct." Finally, Rule 10(b) mandates that a party state its claims or defenses in numbered paragraphs, "each limited as far as practicable to a single set of circumstances." The Seventh Circuit has noted that the "primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "Dismissal of a complaint on the ground that it is unintelligible is unexceptionable" because it "fails to give the defendant the notice to which he is entitled." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) (cleaned up).

The Second Amended Complaint is Faulkner's *third* attempt to craft a complaint that complies with the Rules. The original complaint consisted of 121 pages, 12 counts, and 279 paragraphs against 50 defendants. R. 1, Compl. After several defendants filed motions to dismiss, the previously assigned judge granted Faulkner and Umunna leave to amend, R. 34, and they filed an amended complaint on July 11, 2016. The First Amended Complaint *grew* to 140 pages, and set forth 279 paragraphs and 12 counts against 50 defendants. R. 35. Many of the Defendants moved to dismiss the First Amended Complaint, and the motions were fully briefed. Faulkner and Umunna filed a motion to amend the complaint a second time. R. 201. The previously assigned judge dismissed the First Amended Complaint for failure to comply with Rule 8(a)'s requirement to provide a short and plain statement of the claim. R. 235, Opinion (Mar. 6, 2017), 2017 WL 896843. He

granted leave to amend under the condition Faulkner "do so in strict compliance with the letter and spirit of Rule 8." *Id.* at 5, 2017 WL 896843, at *3.

The Second Amended Complaint does not come close to complying with Rule 8(a). It is 125 pages, 11 counts, and names 48 defendants. R. 247. Worse, the Second Amended Complaint contains 238 paragraphs, and worse still, that is an *under-count* of the true number of allegations, because many paragraphs contain multiple subparts. *See, e.g.*, *id.* ¶¶ 72, 74, 81, 95, 99, 123. One paragraph stretches on for 2½ pages. *Id.* ¶ 123. Of course, length on its own does not necessarily warrant dismissal of a complaint, so long as the defendants and the Court can reasonably understand the allegations. *Stanard*, 658 F.3d at 797. But "where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Id.* at 798; *see also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[E]ven if it were possible to navigate through these papers to a few specific instances of fraud, why should the court be obliged to try? Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). Faulkner has had three chances to file a complaint with an intelligible claim. The previously assigned judge explained the ways in which the First Amended Complaint violated Rule 8(a), and warned Faulkner that his next attempt must comply. R. 235 at 5. Faulkner did not take heed: the Second Amended Complaint still fails Rule 8(a), and the Defendants are not reasonably on notice of the facts he is asserting against them. The problem

is exacerbated by the Second Amended Complaint's failure to comply with Rule 10(b), which requires that each paragraph be "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Here are a few examples of Rule 8(a) and Rule 10(b) non-compliance. Paragraph 99 contains disparate events arising from as many as three different state court cases filed over the course of a year and a half. *See* Sec. Am. Compl. ¶ 99(a)-(c) (alleging injuries caused by eight named and more unknown defendants from the filing of (a) a criminal complaint claiming larceny in April 2010; (b) a mortgage foreclosure case filed in June 2010; and (c) a breach of contract complaint filed in December 2011). There is no apparent logical or chronological order to the paragraphs, either within paragraphs or from paragraph-to-paragraph. For example, Paragraph 105 makes accusations of a December 2013 "conspiracy" between an three judges for refusing to substitute one of the judges, and sub-paragraph 105(a) alleges that Rowells made threats against Faulkner on behalf of the state judges three years later, in 2016. *Id.* ¶ 105(a). The next paragraph, Paragraph 106, then careens backwards in time and topic to Umunna's alleged false arrest in November 2013. In fact, to make comprehension even harder, several paragraphs are repeated verbatim, *see, e.g.*, *id.* ¶¶ 105(a), 123 (identical paragraphs), so the reader has to closely compare the paragraphs to make sure that there are no subtle differences. The pleading is rife with grammar and syntax mistakes. *See, e.g.*, *id.* ¶ 74 ("Plaintiffs in this civil action, as alleged-herein, raised/arising, from the illicit scheme by the Defendant(s) to collectively and

continuously attacks on [Plaintiffs] … .”); ¶ 135 (“Further, are committing fraud through misrepresentation within this matter and the other if not all of their judicial fiduciary duties.”); *see Stanard*, 658 F.3d at 799 (listing grammatical and syntactical errors as one of the defects justifying dismissal under Rule 8(a)).[21]

Defendants are right to argue that the Second Amended Complaint also violates Rule 8(a) because many allegations do not state which *specific* defendants committed which *specific* acts. Defs.’ Mem. Supp. Combined Mot. Dismiss at 17. To be sure, sometimes “group” pleading is permissible, so long as the complaint provides sufficient detail about the allegations so that each defendant is on notice of the claims against him or her, *see Frazier v. U.S. Bank Nat’l Ass’n*, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013) (collecting cases), or a plausible conspiracy, scheme, or joint action is alleged. Here, the Second Amended Complaint fails that test: there are 48 defendants of all types, including banks, judges, law firms, and deputy sheriffs. Many paragraphs simply allege that “defendants” as a whole engaged in activity, when it clearly is impossible that all 48 participated. *See, e.g.*, Sec. Am. Compl. ¶ 123(a) (Detective Pierce “intruded on Faulkner’s home … with a message from the judges *and defendants*, in the case at bar, Faulkner believes, [for the purpose to threaten and harass Faulkner to drop the federal case against judges, banks, law firms, attorneys and individuals for their alleged illicit activities to defraud Faulkner and Umunna, as well as, the other good people of the State of Illinois.]”) (emphasis added; brackets in original); *id.* ¶ 123(e) (“Marvin Faulkner

---

[21]It is important to avoid dismissing complaints just because of a language barrier, which might explain typos and syntax errors, but that is not the problem with the Second Amended Complaint, as detailed above.

now was assured, with no doubt, that Faulkner and Umunna are on a "**Hit List**" for revealing the "*Money Laundering Scheme*" by the Defendants.") (emphasis in original). When a complaint is "unclear how each defendant is supposed to have participated" in the alleged conduct—as is the case here—it violates Rule 8(a). *Griffin v. Milwaukee Cty.*, 369 F. App'x 741, 743 (7th Cir. 2010) (non-precedential disposition); *see also Srivastava v. Daniels*, 409 F. App'x 953, 955 (7th Cir. 2011) (affirming dismissal where "complaint's length and disjointed nature made it impossible for the district court to identify the specific allegations against each defendant and therefore impossible to determine whether any claims had potential merit.").

Finally, even if Defendants could untangle which factual allegations apply to which particular Defendant, it is not clear how each set of allegations relates to the eleven claims.[22] Apart from the RICO Count, every Count of the Second Amended Complaint alleges that "Defendant(s) deprived Plaintiff of **their** Constitutional rights, as well as, violating the 2nd, 4th, 5th and 14th Amendments Rights federal rights, property interests, and otherwise discriminated against [Plaintiffs], based upon the illicit acts by the [Defendants]." Sec. Am. Compl. ¶¶ 143, 147, 156, 165, 174, 184, 202, 212, 221, 224 (emphasis in original). Yet the vehicle for bringing claims to vindicate federal constitutional rights is generally 42 U.S.C. § 1983, not

---

[22]The prior judge pointed out the same flaw. Order (Mar. 6, 2017) at 4. Although the Second Amended Complaint added a section trying to clarify the relief sought, Sec. Am. Compl. at 112-113, the connection between each Defendant's alleged actions and the eleven counts is no clearer.

the plethora of other federal and state law claims advanced by the various counts (only Count 11 is a § 1983 claim).[23]

In fact, some counts allege causes of action that do not even exist. *Id.* at 86 (labeling Count 6 as just "intentional tort"); *id.* at 103 (labeling Count 10 as "pierced corporate veil," which does not correspond to any recognized statutory or common law state or federal claim). Other counts assert claims that lack a private right of action. *Id.* at 69 (Count 2 under 18 U.S.C. § 242); *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), *aff'd,* 963 F.2d 1522 (2d Cir. 1992) (section "242 do[es] not provide for a private right of action"); Sec. Am. Compl. at 78 (Count 4 for "Intimidation," which might be based on the state crime (not civil action) of intimidation, 720 ILCS 5/12-6); *Cabrera v. World's Finest Chocolate, Inc.*, 2004 WL 1535850, at *7 (N.D. Ill. July 7, 2004) ("no civil action is authorized under 720 ILCS 5/12-6"); Sec. Am. Compl. at 91 (Count 7 under 18 U.S.C. § 249); *Chicago Title & Land Tr. Co. v. Rabin*, 2012 WL 266387, at *4 (N.D. Ill. Jan. 30, 2012) ("While the Seventh Circuit has not addressed whether there is a private right of action under the Hate Crimes Act, other courts have held that the Hate Crimes Act, as a criminal statute, does not give rise to a private right of action.").

The unintelligibility of the Second Amended Complaint means that it fails to put Defendants—or this Court—on notice of the legal wrongs Faulkner claims were committed. This is after two prior pleading attempts, including one where the Court dismissed the complaint with a warning that the next attempt must strictly comply

---

[23]As discussed more in-depth below, because a plaintiff can only bring a § 1983 claim against state actors*, Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982), Count 11 fails against most Defendants.

with Rule 8(a) and pointing out the flaws. Yes, this Court must construe *pro se* complaints liberally and "allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006) (citations omitted). But Faulkner has run out of chances. For all the reasons discussed, the Second Amended Complaint is so unintelligible that it must be dismissed under Rules 8(a) and 10(b)—and this time, dismissed with prejudice. *See, e.g. Stanard*, 658 F.3d at 794, 801-02 (affirming dismissal with prejudice under Rules 8 and 10 when proposed second amended complaint failed to fix errors in original 52-page, 28-count complaint alleging claims against 24 known and more unknown defendants); *Garst*, 328 F.3d at 378-79 (district court properly dismissed 155-page, 400-paragraph third amended complaint under Rule 8(a), since the complaint would have forced defendants to spend numerous hours "fishing" for the few relevant allegations); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013) (affirming dismissal of two claims under Rules 8 and 10 when the claims were made up of 88 long paragraphs, Claim One asserted at least 5 causes of actions, the facts were not connected with the causes of action, and plaintiff had multiple opportunities to revise); *Srivastava*, 409 F. App'x at 954-55 (76-page complaint alleging claims against over 70 defendants and alleging over 190 theories of recovery was properly dismissed under Rule 8) (non-precedential disposition); *Griffin*, 369 F. App'x at 742-43 (affirming dismissal with prejudice of *pro se*

plaintiffs' 70-page complaint under 8(a) after plaintiffs had been given opportunity to amend twice and did not take it) (non-precedential disposition).

## B. Rule 12(b)(6)

Because the Second Amended Complaint warrants dismissal under Rules 8(a) and 10(b), this Opinion could end here. But the Court reviewed Faulkner's response brief to evaluate whether there is some salvageable claim, as framed by that brief. There is not. The next sections explain why.

## 1. RICO

Faulkner's response argues that the Second Amended Complaint states an actionable claim against Defendants for their "money-laundering scheme" that Plaintiffs revealed, causing Faulkner and Umunna to be put on a "hit list." Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 5. He lists each Defendant and re-states their purported roles in the money laundering scheme—but Faulkner specifically declares that he is "excluding[] factual statement(s)." *Id.* at 5-11.

Viewed as expansively as possible, it appears that Faulkner is arguing that the Second Amended Complaint states substantive and conspiracy RICO claims, 18 U.S.C. § 1962(c) and (d) (Count 1).[24] To state a RICO claim, first Faulkner "must identify the [RICO] enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir.

---

[24]The elements of a substantive RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001). The elements of a RICO conspiracy claim under 18 U.S.C. §1962(d) are: "that (1) the defendants agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendants further agreed that someone would commit at least two predicate acts to accomplish these goals." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 734-35 (7th Cir. 2014) (cleaned up).

1990). An enterprise may be a legal entity or an extra-legal association in fact. *Id.* at 1440 (citing *United States v. Turkette*, 452 U.S. 576, 576, 582 (1981)). Regardless of the kind of enterprise pled, it must have "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making." *Stachon v. United Consumers Club, Inc.,* 229 F.3d 673, 675 (7th Cir. 2000) (cleaned up). A RICO plaintiff "cannot establish structure by defining the enterprise through what it supposedly does." *Id.* at 676. That is, a plaintiff must show an organization with a structure and goals distinct from the pattern of racketeering activity alleged. Simply stating a string of entities and individuals as the RICO enterprise is insufficient, because "a nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995).

The enterprise allegations fall well short of what is required. Faulkner defines the enterprise as a "money laundering scheme which has existed for over seven years and they operate the enterprise by a continuous, systematic pattern of racketeering activity which has defrauded numerous by extrinsic and intrinsic fraud perpetuated against the plaintiff and participants in this district." Sec. Am. Compl. ¶ 14 (cleaned up); *see also id.* ¶ 68 ("All Defendants were acting as the agents of the others with either express or implied authority to so act in furtherance of their common goal to operate a RICO enterprise and all Defendants benefitted financially (ill-gotten gains) therefrom and ratified the acts of the others."); *id.* ¶ 71

36

(defendants "actively participat[ed] in racketeering activities and continual harm to [Plaintiffs]" and engaged in a "money laundering scheme" by filing fraudulent mortgage foreclosure cases against plaintiffs in favor of them banks). The Second Amended Complaint includes only general and boilerplate allegations of form, function, leadership, and structure that are insufficient to adequately plead a RICO enterprise.[25] *See Rao v. BP Products North Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009).

What's more, because the RICO claim is based on allegations of fraud, Faulkner must plead with particularity as required by Rule 9(b). *Vicom*, 20 F. 3d at 777. The Second Amended Complaint fails to meet the minimum requirement of describing "the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetuating the fraud." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (cleaned up). Faulkner does not allege facts supporting the necessary predicate acts under 18 U.S.C. § 1962(c) or the conspiratorial agreement amongst Defendants necessary under § 1962(d). As noted above, the Second Amended Complaint makes only conclusory allegations of underlying fraudulent acts and agreements, and Faulkner's response to the

---

[25]Faulkner's response to Defendants' motions to dismiss re-alleges Defendants' roles in the enterprise but includes no new facts or argument about how the structure of defendants operated with a common purpose. *See, e.g.*, Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 5-6 (Judge Loftus is one of the directors of the enterprise); *id.* at 6 (Pierce & Associates files complaints on behalf of banks, using its close relationship with judges "for ill-gotten gains"); *id.* at 6-7 (Chuhak and Eurich orchestrate misrepresenting documents "to facilitate the racketeering activities); *id.* at 9 (Varak is "directed by Judge Loftus and Judge Sullivan; receiving unlawful payouts and is committing Mail Fraud and is active within the enterprise"); *id.* at 11 (Pierce is directed by many judges and is active within the enterprise).

dismissal motions does not clarify where or how the Court can find the requisite enterprise or predicate acts in the morass of the Second Amended Complaint. The Second Amended Complaint fails to adequately allege RICO claims.

## 2. Constitutional Violations

Faulkner's response to the dismissal motions also argues that government employees owe a duty not to violate citizens' constitutional rights. Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 12. The private companies and individuals (that is, the non-government individuals) are not viable targets of the constitutional claims because they are not state actors and not plausibly pled to have acted jointly with state actors. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Any of the state judges are protected by judicial immunity (as detailed below). If there was jurisdiction over the claims against the City of Chicago (see the *Rooker-Feldman* discussion above), then still there would be no adequate claim against the City, because the single paragraph that says anything about the City is nothing more than a conclusion devoid of factual content. Sec. Am. Compl. ¶ 135.[26]

On the sheriff deputies, the Second Amended Complaint contains scant allegations against Officer Gronowski and the Cook County Sheriff's Office. The few alleged facts do not adequately state a claim for a violation of Faulkner's constitutional rights. Sec. Am. Compl. ¶ 100 (during hearings in state court, a Cook

---

[26]The Second Amended Complaint also does not allege that any constitutional violation by the City under 42 U.S.C. §§ 1983, 1985, or 1986 resulted from a municipal policy, as required by *Monell. See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1987); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (applying *Monell* standards to § 1985 claim); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991) ("Absent a viable claim under § 1985 … there could be no claim under § 1986.").

County sheriff often stood near Faulkner in an intimidating way); *id.* ¶ 134 (Gronowski gave defendant attorney Varak a message from Judge Loftus to "follow Judge Sullivan's lead."). These sparse allegations do not state a claim against Gronowski or the Cook County Sheriff's Office for a violation of Faulkner's constitutional rights under §§ 1983, 1985, or 1986.

With regard to Officer Pierce, at least as to him there are more specific allegations asserted. But the allegations are not connected to a valid cause of action, and thus fail to put Pierce on notice of the claims against him. And some of the allegations are contradictory: Faulkner alleges that Pierce intruded on his home with a "false" grand jury subpoena, but later admits that he failed to appear before the grand jury and a Rule to Show Cause was issued for his non-appearance. Sec. Am. Compl. ¶ 123. Faulkner also alleges that Pierce visited his home in November 2015, and although he reassured Faulkner that Faulkner was not under arrest, he allegedly required Faulkner to come with him to the Sheriff's Office and detained him there for 24 hours. Sec. Am. Compl. ¶¶ 118-19. But the Second Amended Complaint says nothing about a false arrest claim. Instead, the Section 1983 cause of action makes sweeping claims about the alleged widespread conspiracy amongst Defendants. *Id.* ¶ 226 ("Defendants' plot to destroy the Plaintiffs because the Plaintiffs performed and exercised their constitutional, State and local rights to defend themselves and their properties against corruption against the Defendants … .") (cleaned up). And given the overall prolixity and unclear nature of the complaint, as discussed earlier, the constitutional claims fail.

### 3. Judicial Immunity

The rest of Faulkner's response to the dismissal motions focuses on the Judicial Defendants' argument that they are protected by judicial immunity. Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 12-13. When a judge does something that qualifies as a judicial act (that is, the act is carried out in a judicial capacity and jurisdiction is not clearly absent), then absolute immunity applies—even if the conduct was baseless, malicious, corrupt, or violates the Constitution.[27] *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity applies to Faulkner's allegations.

First, the Judicial Defendants, who are judges in the Chancery Division, have jurisdiction over mortgage foreclosure actions. Second, Faulkner's allegations against them arise from conduct that clearly constitutes judicial acts: (1) ordering foreclosures on property and ordering a sheriff's sale; (2) ruling on motions for summary judgment; (3) refusing to address motions for declaratory judgment; (4) denying motions to vacate the judgment; and (5) striking and denying motions to intervene. Sec. Am. Compl. ¶¶ 84, 111-12, 114, 135-36. Faulkner's argument that judicial immunity cannot apply because the Circuit Court of Cook County is a criminal enterprise is meritless: in the only case he relies on, the government brought *criminal* RICO charges against a Cook County judge as part of Operation Greylord. Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 12 (citing *United States v.*

---

[27]Faulkner relies on *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974), *abrogated by Harlow v. Fitzgerald*, 457 U.S. 800 (1982), to argue that immunity does not apply when a state officer violates the Constitution. Pl.'s Resp. to Defs.' Combined Mot. Dismiss at 13. But *Scheuer* addresses qualified immunity, not absolute judicial immunity. *See Scheuer*, 416 U.S. at 237, 242.

*Murphy,* 768 F.2d 1518, 1531 (7th Cir. 1985)). Because the conduct at issue here comprises judicial acts, the claims against the Judicial Defendants are barred by judicial immunity.

## VII. Jenner & Block is Not a Defendant

Jenner & Block moved for an order confirming that it is no longer a defendant in this case, or alternatively for an order dismissing any claims against it with prejudice. R. 265. The Second Amended Complaint does not list Jenner in the case caption, as required by Federal Rule of Civil Procedure 10(a). Sec. Am. Compl. at 1. A party not named in the caption is not a party defendant, regardless of the allegations in the body of the pleading. *See Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005) (citing Rule 10(a)). What's more, the Second Amended Complaint fails to state a claim against Jenner: it includes no particularized allegations against Jenner, only including it in mass-group allegations. Sec. Am. Compl. ¶¶ 74, 143, 147, 174, 184, 202, 212. In response to Jenner's motion to confirm it is not a defendant, Faulkner asked the Court to resolve the motion one of three ways, including dismissing his claims against Jenner with prejudice. R. 313 at 2. Jenner is dismissed from this action with prejudice.

## VIII. UPB's Motion for Attorney's Fees

Plaintiffs Faulkner and Umunna sought to remove a state court mortgage foreclosure case filed against them, Cook County Circuit Court Case No. 2012-CH-38498. R. 7. This Court concluded the removal attempt was frivolous, and imposed

attorney's fees related to the preparation of Urban Partnership Bank's (UPB) motion for remand under 28 U.S.C. § 1447(c). R. 254, Order (May 18, 2017).

In accordance with the remand order, UPB conferred in good faith with Faulkner and Umunna but did not reach an agreement on the amount of fees. R. 297 at 1. So UPB filed a motion for attorney's fees, requesting $2,650.50. *Id.* In support of its motion, UPB filed an affidavit from one of its attorneys, including an excerpt from the billing records from the matter. *Id.*, Exh. A. The affidavit attests that the attorney's fees charged accurately reflect the time spent on UPB's original remand motion. *Id.* The amount does not include other substantial fees incurred by UPB resulting from Faulkner and Umunna's removal attempt. *Id.* The rate charged ($285 hourly) for the preparation of UPB's motion for remand is reasonable given the Chicago legal market, and Faulkner offers no evidence to the contrary. The number of hours (9.3 hours) is also reasonable in light of the tortured procedural history that had to be reviewed and explained.

Faulkner did not substantively respond to the amount requested in his response. Instead, he argued that the issue was part of an interlocutory appeal before the Seventh Circuit. R. 339 at 2. This Court certified that the interlocutory appeal was frivolous. R. 329. The Seventh Circuit dismissed Faulkner's appeal for lack of jurisdiction. R. 363. So the appeal was not a good reason to skip responding to the fees request. Faulkner also argues that UPB's harm was "self-inflicted" because UPB requested monthly status hearings in the state court case before this Court remanded the case. R. 339 at 2-3. This argument fails for two reasons. First,

it was Faulkner, not UPB, who removed the case to federal court, R. 7, so the expenses UPB incurred in federal court filing a motion to remand the case to chancery court cannot be considered "self-inflicted." Second, any expenses UPB incurred in state court are *not* included in UPB's request for attorney's fees. R. 297 at 1-2. Faulkner makes no valid argument against the reasonableness of UPB's request for $2,650.50 in attorney's fees related to its original motion for remand.

By May 7, 2018, Faulkner and Umunna shall pay UPB the amount of $2,650.50 by delivering a cashier's check, payable to Urban Partnership Bank, to Michael W. Debre, Chuhak & Tecson, P.C., 30 S. Wacker Drive, Suite 2600, Chicago, Illinois 60606. Faulkner and Umunna are jointly and severally responsible for making the $2,650.50 payment.

### IX. KSN and Gomez's Motion for Sanctions

Kovitz, Shifrin, & Nesbit and Gomez (the KSN Defendants) move for Rule 11 sanctions, requesting dismissal of Faulkner's claims against them with prejudice and attorney's fees and costs. R. 287 at 7. The KSN Defendants argue that Faulkner violated Rule 11 by failing to conduct an adequate pre-suit investigation—especially in light of the quasi-criminal allegations against the KSN Defendants—and the counts directed at the KSN Defendants lack a reasonable basis in fact and law. *Id.* at 4-6. As discussed above, all of Faulkner's claims against the KSN Defendants fail under the *Rooker-Feldman* doctrine. So the Court did not scrutinize the merits of Faulkner's claims against the KSN Defendants, and requiring both Faulkner and the KSN Defendants to address the merits would only cause more time, effort, and

43

fees. Yes, the claims are barred by *Rooker-Feldman*, but on this record, sanctions as to the claims against the KSN Defendants are not warranted.[28] It is also worth noting that the KSN Defendants' contribution to the dismissal motion comprised only one four-line paragraph in the Defendants' brief. Defs.' Mem. Supp. Combined Mot. Dismiss at 16. And the KSN Defendants did not identify the state court cases and final judgments that barred Faulkner's claims against them. (The Court was able to identify the state cases from the allegations in the Second Amended Complaint.) The KSN Defendants' request for attorney's fees and costs is denied.

## X. Rule to Show Cause

The final issue is whether to impose sanctions on Faulkner for advancing a specific frivolous argument in two recusal motions, R. 276 and 289, that this Court denied, R. 282 and 291. In the recusal motions, Faulkner accused this Court of possibly threatening to "kill" him and Umunna. R. 276 at 2, 8; R. 289 at 3, 9-10. In the order denying the first recusal motion, the Court warned Faulkner that baseless allegations, like that one, may warrant the imposition of sanctions initiated by the Court under Federal Rule of Civil Procedure 11(c)(3). R. 282. Faulkner then filed his renewed motion to recuse, making the same baseless allegations against the Court.

---

[28]Faulkner filed a complaint in this District alleging substantially similar claims against many of the same defendants. Complaint, *Faulkner et al. v. Otto et al.*, 15-cv-03344, (N.D. Ill. Apr. 15, 2015), R. 1. The court dismissed his claims against a judicial defendant under *Rooker-Feldman* on April 5, 2016, 2016 WL 1381795, over a year before Faulkner filed his Second Amended Complaint in the instant case, R. 247 (filed April 24, 2017). The Court is skeptical that Faulkner is not at all familiar with the doctrine. That said, the KSN Defendants were not defendants in Faulkner's previous suit, and they did not move to dismiss his First Amended Complaint under *Rooker-Feldman*. R. 164. Faulkner arguably was not on notice that his claims against the KSN defendants lacked jurisdiction and "successively [sought] to press a wholly frivolous claim" against the KSN defendants. *Ricketts v. Midwest Nat. Bank*, 874 F.2d 1177, 1182 n.4 (7th Cir. 1989).

R. 289 at 3 (arguing for recusal based on, in part, "Judge Chang's [t]hreats to the Plaintiff Marvin Faulkner of possible Killing or set up Plaintiffs Faulkner and Umunna"). The Court denied Faulkner's renewed motion for the same reasons, and ordered him to show cause why the identified statement does not violate Rule 11(b)(1) or 11(b)(3). R. 291. Rather than retract the statement, Faulkner's response to the rule to show cause tries to massage the accusation's meaning. Faulkner argues that he merely stated that he and Umunna "are not sure if" the judge was threatening to kill them, so really Faulkner was just asking for "clarification" about whether his safety was at issue at the hands of the judge. R. 312 at 2-3, 9. It should go without saying that a litigant cannot dress up a baseless accusation with words like "possible" or "not sure" in order to make the statement free from responsibility. The bottom line is that there is no reasonable basis in fact to even be "not sure" whether the judge was threatening to kill him.

It is true that, in light of the absence of a "safe harbor" provision when a Court acts on its own initiative under Rule 11(c)(3), "corrective action ... should be taken into account in deciding what—if any—sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred." Fed. R. Civ. P. 11, Advisory Committee Notes (1993). But even after a warning, Faulkner made the same baseless statement, and then his response makes no retraction or apology. Under these circumstances, the Court finds that sanctions are warranted under Rule 11(b)(1) and (b)(3).

On the issue of what penalty to impose, in very serious cases, courts have dismissed complaints *sua sponte* under Rule 11.[29] But the case is already being dismissed, and the Court would have been hesitant to impose the most serious sanction (dismissal with prejudice) for what Faulkner did. Here, the most appropriate sanction is a fine payable to the District Court. *See* Fed. R. Civ. P. 11, Advisory Committee Notes (1993) ("[A] monetary sanction imposed after a court-initiated show cause order [is] limited to a penalty payable to the court."). Because the central purpose of Rule 11 is to deter baseless filings, the amount of the sanction should correspond. Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct."); *see also Jimenez*, 321 F.3d at 656-57. District courts within this Circuit have imposed a wide range of sanctions *sua sponte*,[30] and the Seventh Circuit has affirmed a range as well.[31]

---

[29]*See Simmons v. Stockstill*, 2010 WL 3938193, at *8-9 (C.D. Ill. Oct. 4, 2010) (*sua sponte* dismissing a case with prejudice under Rule 11 when the plaintiff disregarded the court's rules and orders, his complaint had no basis in law or fact and appeared "designed to harass Defendants, to cause the unnecessary burden of defending a patently malicious lawsuit, and to vexatiously and contumaciously multiply proceedings that are a waste of judicial resources." The plaintiff also failed to respond to the order to show cause.) (citing *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming dismissal under Rule 11 after defendants filed a Rule 11 motion because plaintiff had falsified documents to support her claim)); *see also Dolis v. Santos*, 2015 WL 1541137, at *1 (S.D. Ill. Mar. 31, 2015) (the district court adopted Magistrate's Judge's report and recommendation and *sua sponte* dismissed the case as a Rule 11 sanction).

[30]*See Tartt v. Magna Health Sys.*, 2014 WL 4087220, at *4 (N.D. Ill. Aug. 19, 2014) (*sua sponte* sanctioning *pro se* plaintiff $100 under Rule 11 where plaintiff asserted frivolous claims against multiple federal judges after a warning that the claims were baseless, and threatening further sanctions, including dismissal, if he continued to assert claims against the judges); *Neuman v. United States*, 2009 WL 1514566, at *2-3 (S.D. Ill. June 1, 2009) (imposing $1,000 sanction on *pro se* plaintiff under Rule 11(c)(3) where he persisted in filing multiple motions lacking factual support, containing baseless allegations, and rearguing the same issues, after a warning from the court, and warning that further

In one case, the Seventh Circuit affirmed the imposition of a $5,779.64 sanction after defendants moved for Rule 11 sanctions based on the plaintiff's "duplicitous litigation based on unfounded allegations" against multiple defendants, but also because he made "scurrilous allegations" that "impugned the integrity of a state court judge as well as the reputation of a federal district court judge with total disregard for the truth. … [T]he only evidence of improper conduct consists of the plaintiff's own baseless accusations that court officials were personally biased and abused their authority and that a conspiracy existed." *Fries v. Helsper*, 146 F.3d 452, 459 (7th Cir. 1998). But sanctions in *Fries* were imposed after the defendants filed a Rule 11 motion based on frivolous litigation; the sanction was not only for the plaintiff's "scurrilous allegations" about a state and federal judge. *Id.* Here, the only basis for sanctions, at least right now, is Faulkner's baseless accusations against the Court.[32] The Court thus finds that $400, the amount of the civil filing fee, is an

---

personal attacks on the Court may result in the Court finding the plaintiff in civil and/or criminal contempt of court); *see also Malibu Media LLC v. John Doe subscriber assigned IP address 24.183 .51.58*, 2013 WL 4821911, at *5 (W.D. Wis. Sept. 10, 2013) (sanctioning lawyer $200 for each complaint filed that attached an exhibit that served no purpose but to harass and intimidate defendants, for a total of $2,200); *United States v. Holmes*, 2007 WL 3085878, at *1 (S.D. Ill. Oct. 19, 2007) (sanctioning attorney $500 for filing a legally frivolous motion).

[31]*See Powers v. Duckworth*, 64 F.3d 665 (7th Cir. 1995) (affirming *sua sponte* imposition of $500 sanction when *pro se* plaintiff failed to disclose prior, identical habeas petition); *see also Copeland v. Tom's Foods, Inc.*, 456 F. App'x 592, 593 (7th Cir. 2012) (district court's *sua sponte* imposition of $3,000 sanction was reasonable where lawyer filed a federal complaint that was identical to an already-filed state suit); *Burda v. M. Ecker Co.*, 2 F.3d 769, 776 (7th Cir. 1993) (reducing *sua sponte* sanction amount from $2,500 to $1,000 where attorney made objectively unreasonable and frivolous legal arguments); *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710-11 (7th Cir. 2001) (noting there may be cases in which a $50,000 sanction is appropriate, but the district court did not provide sufficient reasoning to impose such a significant sanction).

[32]As discussed above, the Court denied the KSN Defendants' motion for sanctions because it did not scrutinize Faulkner's claims against those Defendants.

appropriate sanction to deter future baseless accusations against this judge or other judges.[33] Faulkner is directed to pay the Clerk of Court $400 by May 7, 2018. Faulkner shall mail his payment to the Clerk of the Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, payable to Clerk, U.S. District Court.

## XI. Conclusion

For the reasons discussed, Faulkner's Second Amended Complaint is dismissed as to all defendants. The KSN Defendants' motion for Rule 11 sanctions is denied. Urban Partnership Bank's motion for attorney's fees in the amount of $2,650.50 is granted. By May 7, 2018, Faulkner and Umunna shall pay UPB the amount of $2,650.50 by delivering a cashier's check, payable to Urban Partnership Bank, to Michael W. Debre, Chuhak & Tecson, P.C., 30 S. Wacker Drive, Suite 2600, Chicago, Illinois 60606. Faulkner and Umunna are jointly are severally responsible for making the $2,650.50 payment. Separately, the Court imposes a $400 sanction under Rule 11. By May 7, 2018, Faulkner is to mail his payment to the Clerk of the Court for the Northern District of Illinois, 219 South Dearborn

---

[33]It will be difficult for Faulkner to make similar accusations in the Northern District of Illinois moving forward because the Executive Committee entered an order enjoining Faulkner from filing any new civil action in this Court without first obtaining leave from the Executive Committee. Executive Committee Order, In the Matter of Marvin Faulkner, No. 17-cv-4702 (N.D. Ill. June 22, 2017), R. 1.

Street, Chicago, Illinois 60604, payable to Clerk, U.S. District Court. The status hearing of April 5, 2018 is vacated.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2018